UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| BRIAN SETTY, | Case No. 23-cv-02464-LB |
| Plaintiff, | |
| v. | **ORDER ADDRESSING MOTION TO DISMISS** |
| UNITED FINANCIAL CASUALTY COMPANY, INC., | |
| Defendant. | Re: ECF No. 6 |

**INTRODUCTION**

The plaintiff, who was seriously injured in a car accident and incurred at least $900,000 in medical expenses, sued his car-insurance company over a dispute about whether his insurance policy was effective at the time of the accident. The plaintiff had insurance until September 27, 2020, and the policy was to renew for another six months if the plaintiff made payment. Before September 27, and as required by California Insurance Code § 663, the defendant sent him various documents that amounted to an offer of renewal. One of those documents mentioned a fee for late payments. The accident then happened on September 30, 2020, and the plaintiff made a late payment on October 8. The parties dispute whether, in light of the insurance contract, the pre-

renewal documents, and § 663, the policy renewed on September 27 or instead lapsed until the late payment.[1]

The defendant moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that as a matter of law, the plaintiff's policy was not effective as of September 30, 2020.[2] The plaintiff argues among other things that in specifying a late-payment-fee amount, the defendant's renewal offer implied that late payments are an effective acceptance of the offer.[3] Because an important contractual document was not submitted until the reply brief, this order sets out the court's preliminary analysis and allows further briefing.

## STATEMENT

**1. Factual Background**

The plaintiff had car insurance under Progressive Policy Number 93308838.[4] He sued the underwriter of the insurance policy, United Financial Casualty Company.[5] His policy provided underinsured motorist coverage with a limit of $500,000.[6] On September 30, 2020, he was "seriously injured" in a car accident caused by another driver in Sacramento County. The other driver was at fault and underinsured.[7] The plaintiff "was hospitalized for a lengthy period of time and underwent multiple surgeries," incurring "no less than $901,875.62" in medical expenses.[8]

The plaintiff's insurance policy provided coverage for six-month policy periods and provided for renewal of the policy after the expiration date of each period. One such period lasted from

---

[1] Compl. – ECF No. 1-1 at 6–15. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents and sometimes also to the page numbers at the bottom of documents.

[2] Mot. – ECF No. 6.

[3] Opp'n – ECF No. 12.

[4] Compl. – ECF No. 1-1 at 7 (¶ 7).

[5] *Id.* at 6 (¶¶ 1–2). The plaintiff originally sued United Financial's parent company Progressive Holdings as well, but that entity was dismissed from the case. Clerk's Entry of Dismissal, Ex. B to Notice of Removal – ECF No. 1-2.

[6] Compl. – ECF No. 1-1 at 7 (¶ 7).

[7] *Id.* at 9 (¶ 18).

[8] *Id.* at 8 (¶ 14).

March 27, 2020 until September 27, 2020.[9] The policy also provided that the insurer "may nonrenew for . . . nonpayment of premium" and had the following "Automatic Termination" provision:

> If we or an affiliate offers to renew or continue this policy and you or your representative does not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due will mean that you have not accepted our offer.[10]

The plaintiff alleges that on August 25, 2020, the defendant sent "several documents" to the plaintiff "offering a renewal of the policy" to last from September 27, 2020 until March 27, 2021.[11] One such document, the "Renewal Declarations Page," provided that "[t]he coverages, limits and policy period shown apply only if you pay for this policy to renew" and "[y]our coverage begins on September 27, 2020."[12] It included a payment schedule under which payments were due on the 27th of each month, including on September 27. As part of this payment schedule, the correspondence "stated [that] there may be a late payment fee applied of $10."[13] The correspondence "did not communicate [that] payment must be made before September 27, 2020 for the policy to renew and/or for the coverages to apply during the stated coverage period."[14]

The second August 25 document sent by the defendant, titled "Your Policy is Ready for Renewal," was submitted only with the defendant's reply brief.[15] It stated "[t]his renewal offer is for the policy period September 27, 2020 through March 27, 2021," asked the plaintiff to choose a payment option (the full premium or an initial installment), provided that a "[r]enewal [p]ayment"

---

[9] *Id.* at 7 (¶¶ 7–8); Policy, Ex. 1 to Henry Decl. – ECF No. 7-1 at 2 (p. 1). The court can consider the documents submitted with the defendant's motion under the incorporation-by-reference doctrine. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

[10] Policy, Ex. 1 to Henry Decl. – ECF No. 7-1 at 39 (p. 32).

[11] Compl. – ECF No. 1-1 at 7 (¶ 9).

[12] Renewal Decls. Page, Ex. 2 to Henry Decl. – ECF No. 7-2 at 2 (p. 1).

[13] Compl. – ECF No. 1-1 at 7–8 (¶¶ 10–11).

[14] *Id.* at 8 (¶ 12).

[15] Suppl. Henry Decl. – ECF No. 13-1 at 2 (¶ 2); Goldberg Decl. – ECF No. 13-2.

ORDER – No. 23-cv-02464-LB    3

was due by September 27, 2020, and set out a "[r]enewal [p]ayment [s]chedule" with payments due on the 27th of each month.[16]

"On September 11, 2020, sixteen days before expiration of the policy," the defendant sent the plaintiff another correspondence.[17] This correspondence, a "Renewal Reminder," said "[w]e recently sent the renewal policy information for your next policy period. . . . This renewal offer is for the policy period September 27, 2020 through March 27, 2021."[18] It had a "Payment Coupon" section stating that "[t]o avoid a lapse in coverage, your payment must be received or postmarked by 12:01 a.m. on September 27, 2020."[19] It also provided for the option of paying the full premium of $682.88 or an "initial installment" payment of $122.57.[20]

On October 8, 2020, the plaintiff "made a payment of $122.57, the amount indicated in [the] defendants' multiple offers to provide coverage from September 27, 2020 through March 27, 2021."[21] The plaintiff alleges that this payment consummated a contract for insurance coverage for that period.[22] But the defendant "denied coverage, claiming the policy lapsed and/or was not in effect as of the date of loss, September 30, 2020."[23] The defendant declares that because the payment was not made by September 27, the policy expired on that date and then was "reinstated on October 9, 2020 for the period October 9, 2020 to April 9, 2021."[24] The reinstated policy provides that it covers that period.[25]

---

[16] Renewal Notice, Ex. 1 to Suppl. Henry Decl. – ECF No. 13-1 at 4–5 (pp. 1–2).

[17] Compl. – ECF No. 1-1 at 8 (¶ 13).

[18] Renewal Reminder, Ex. 3 to Henry Decl. – ECF No. 7-3 at 2 (p. 1).

[19] *Id.*; Compl. – ECF No. 1-1 at 8 (¶ 13).

[20] Renewal Reminder, Ex. 3 to Henry Decl. – ECF No. 7-3 at 2 (p. 1).

[21] Compl. – ECF No. 1-1 at 8 (¶ 15).

[22] *Id.* (¶ 16).

[23] *Id.* at 9 (¶ 20).

[24] Henry Decl. – ECF No. 7 at 2 (¶¶ 5–7).

[25] Reinstated Policy, Ex. 4 to Henry Decl. – ECF No. 7-4 at 2 (p. 1).

**2. Procedural History**

The plaintiff filed the complaint in state court and the defendant removed it to this court.[26] The complaint has two claims: breach of contract and breach of the implied covenant of good faith and fair dealing.[27]

It is undisputed that the court has diversity jurisdiction. 28 U.S.C. § 1332. All parties consented to magistrate-judge jurisdiction.[28] *Id.* § 636(c). The court held a hearing on August 10, 2023.

**STANDARD OF REVIEW**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of (1) what the claims are and (2) the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, "[a] complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016).

A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (cleaned up). A complaint must contain factual allegations that, when accepted as true, are sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*, 838 F. App'x 231, 234 (9th Cir. 2020). "[O]nly the *claim* needs to be plausible, and not the facts themselves . . . ." *NorthBay*, 838 F. App'x at 234 (citing *Iqbal*, 556 U.S. at 696); *see Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886–87 (9th Cir. 2018) (the court must accept the factual allegations in the

---

[26] Notice of Removal – ECF No. 1.

[27] Compl. – ECF No. 1-1 at 9–14 (¶¶ 22–43).

[28] Consents – ECF Nos. 4–5.

complaint "as true and construe them in the light most favorable to the plaintiff") (cleaned up).

Put another way, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (cleaned up).

If a court dismisses a complaint because of insufficient factual allegations, it should give leave to amend unless "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). If a court dismisses a complaint because its legal theory is not cognizable, the court should not give leave to amend. *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016); *see Steele-Klein v. Int'l Bhd. of Teamsters, Loc. 117*, 696 F. App'x 200, 202 (9th Cir. 2017) (leave to amend may be appropriate if the plaintiff "identifie[s] how she would articulate a cognizable legal theory if given the opportunity").

## ANALYSIS

The issue is whether the plaintiff's insurance coverage renewed on September 27, 2020 or instead lapsed until the plaintiff's late payment on October 8, 2020.

### 1. Legal Standard

"Because [the plaintiff] resided in California and the insurance contract was made in California, California substantive law governs this diversity action." *Freeman v. Allstate Life Ins. Co.*, 253 F.3d 533, 536 (9th Cir. 2001). In California, courts apply contract law to interpret insurance policies:

> Interpretation of an insurance policy is a question of law and follows the general rules of contract interpretation. The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the mutual intention of the parties. Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. (Civ. Code, § 1636). Such intent is to be inferred, if possible, solely

from the written provisions of the contract. (*Id.*, § 1639). The clear and explicit meaning of these provisions, interpreted in their ordinary and popular sense, unless used by the parties in a technical sense or a special meaning is given to them by usage (*id.*, § 1644), controls judicial interpretation. (*Id.*, § 1638.) A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable. But language in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract.

*MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 647–48 (2003) (cleaned up). If the language is ambiguous or unclear, "it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." *Bank of the W. v. Super. Ct.*, 2 Cal. 4th 1254, 1264–65 (1992). And if that rule fails to resolve the ambiguity, "courts then invoke the principle that ambiguities are generally construed against the party who caused the uncertainty to exist (i.e., the insurer) in order to protect the insured's reasonable expectation of coverage." *Powerline Oil Co. v. Super. Ct.*, 37 Cal. 4th 377, 391 (2005) (cleaned up).

At issue here is renewal and lapsing of insurance policies. With respect to car insurance, "[r]enewal . . . means to continue coverage with . . . the insurer which issued the policy . . . for an additional policy period upon expiration of the current policy period." Cal. Ins. Code § 660(e). "'Expiration' means termination of coverage by reason of the policy having reached the end of the term for which it was issued or the end of the period for which a premium has been paid." *Id.* § 660(i).

"An express provision of an insurance contract stipulating that a default in payment renders the policy void or causes it to lapse is valid, and a default in such payment ordinarily forfeits the policy where statutory provisions are not violated." *Scott v. Fed. Life Ins. Co.*, 200 Cal. App. 2d 384, 391 (1962). In the case of car insurance, a "[s]tatute[] require[s] the insurer to provide certain forms of notice to the insured before expiration of the current policy period, in the absence of which the policy is automatically extended." H. Croskey et al., Cal. Prac. Guide: Ins. Litig., Ch. 5-D ¶ 5:98 (Rutter Grp. 2022). Specifically, if it wants to renew the policy, the insurer must deliver to the named insured "a written or verbal offer of renewal of the policy, contingent upon payment of premium as stated in the offer," at least twenty days before policy expiration. Cal. Ins. Code § 663(a)(1).

If the insurer provides a valid renewal offer under § 663, then, "the failure of an insured to pay a premium on or before the date specified in the renewal offer will result in termination of the policy" if the policy so provides. *Monteleone v. Allstate Ins. Co.*, 51 Cal. App. 4th 509, 516 (1996) (cleaned up); *Scott*, 200 Cal. App. 2d at 391. A subsequent (late) premium payment will mean that "[t]he policy lapsed, as stated in the renewal offer[,] . . . until the date [the insurer] received the late premium and reinstated [the policy] as of the date [the insured] mailed [the premium]." *Monteleone*, 51 Cal. App. 4th at 516. If, on the other hand, the policy contains a "grace period before the policy [can] be terminated for the failure to pay the premium," the result is different. *See, e.g.*, *McHugh v. Protective Life Ins. Co.*, 12 Cal. 5th 213, 221 (2021).

It bears emphasizing that, because an offer of renewal under § 663 must be "contingent upon payment of premium as stated in the offer," the terms of the offer dictate whether a late payment results in lapse. That is, for a late payment to result in lapse, the offer must specify a due date and that timely payment is required for renewal to occur. *Monteleone*, 51 Cal. App. 4th at 516; *Mackey v. Bristol W. Ins. Servs. of Cal., Inc.*, 105 Cal. App. 4th 1247, 1264 (2003) ("Under [§ 663], the failure of an insured to pay the premium on or before the date specified in the renewal offer will result in an automatic termination of the policy[.]"); *Kates v. Workmen's Auto Ins. Co.*, 45 Cal. App. 4th 494, 504 (1996) ("[W]hen an insurer sends a timely notice of renewal which provides that continued coverage is contingent on payment of the premium before the end of the period for which the current premium has been paid, and the insured fails to make that payment, the coverage expires at the end of that period."); *Fujimoto v. W. Pioneer Ins. Co.*, 86 Cal. App. 3d 305, 313 & n.8 (1978) (because the insurer "offered to renew the policy for an additional six-month period commencing June 21, 1976, upon receipt of the required premium before that date," the plaintiff's late payment was not an effective acceptance).

**2. Application**

Here, the court is leaning towards granting the motion to dismiss. The policy that was in effect from March 27, 2020 until September 27, 2020 made clear that "a default in payment renders the policy void." *Scott*, 200 Cal. App. 2d at 391. Specifically, the policy provided that "[f]ailure to pay

ORDER – No. 23-cv-02464-LB                    8

the required renewal or continuation premium when due" would terminate the policy.[29] And the defendant arguably satisfied § 663 because on August 25, 2020 (more than twenty days before policy expiration), it sent the plaintiff a written renewal offer contingent on the plaintiff's paying by September 27, 2020. Cal. Ins. Code § 663(a)(1). (The September 11 correspondence cannot be considered because it was untimely under § 663.) The August 25 Renewal Notice provided that a "[r]enewal [p]ayment" was due by September 27, 2020, and the August 25 Renewal Declarations Page said "[t]he coverages, limits and policy period shown apply only if you pay for this policy to renew."[30]

Granted, the Renewal Declarations Page mentioned late fees, and the Renewal Notice set out a "[r]enewal [p]ayment [s]chedule" with payments due on the 27th of each month.[31] Together, these provisions created some ambiguity about whether a timely payment was required to avoid lapse, because they implied that a "renewal payment" is simply a regular monthly payment on the next six-month policy period and that late payments are valid. It really was not until the September 11 correspondence that the defendant's communication became most clear, by saying "[t]o avoid a lapse in coverage, your payment must be received or postmarked by 12:01 a.m. on September 27, 2020."[32]

Still, it may be that the court should resolve this ambiguity in the insurer's favor, under the rule that ambiguous language "must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." *Bank of the W.*, 2 Cal. 4th at 1264–65. Here, it stands to reason that the plaintiff (the promisee) would understand the August 25 correspondence to convey that an untimely payment at the time of policy-period renewal would

---

[29] Policy, Ex. 1 to Henry Decl. – ECF No. 7-1 at 39 (p. 32) ("Automatic Termination" provision).

[30] Renewal Decls. Page, Ex. 2 to Henry Decl. – ECF No. 7-2 at 2 (p. 1); Renewal Notice, Ex. 1 to Suppl. Henry Decl. – ECF No. 13-1 at 4 (p. 1).

[31] Renewal Decls. Page, Ex. 2 to Henry Decl. – ECF No. 7-2 at 3 (p. 2); Renewal Notice, Ex. 1 to Suppl. Henry Decl. – ECF No. 13-1 at 5 (p. 2).

[32] Renewal Reminder, Ex. 3 to Henry Decl. – ECF No. 7-3 at 2 (p. 1); Compl. – ECF No. 1-1 at 8 (¶ 13).

result in policy termination, given that the plaintiff's policy had an "Automatic Termination" provision specifying just that.[33]

Assuming the defendant satisfied § 663, that would mean the policy was not effective on the date of loss, September 30. The plaintiff paid the renewal premium (i.e., the first installment payment on the renewed policy) late rather than when it was due.[34] Accordingly, the policy would have lapsed during the period of payment default, and the renewed policy period would have begun on October 8 rather than September 27. *Monteleone*, 51 Cal. App. 4th at 516.

But for now, all of that is preliminary. The defendant submitted the August 25 Renewal Notice only with its reply brief. The plaintiff objected to that submission.[35] The Renewal Notice is crucial to the defendant's motion, because it was the only document that (potentially) satisfied § 663's payment-contingency requirement by specifying the due date of the plaintiff's renewal payment.[36] The issue then is whether and how the court should, in its discretion, consider the August 25 Renewal Notice.

Under the incorporation-by-reference doctrine, the court may consider a document "even though the plaintiff does not explicitly allege the contents of that document in the complaint," where "the plaintiff's claim depends on the contents of [the] document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document."[37] *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). But generally, "[i]t is improper for the moving party to 'shift gears' and introduce new facts . . . in the reply brief than presented in the moving papers." K. Stevens et al., Rutter Grp. Prac. Guide, Fed. Civ. P. Before

---

[33] Policy, Ex. 1 to Henry Decl. – ECF No. 7-1 at 39 (p. 32).

[34] Compl. – ECF No. 1-1 at 8 (¶ 15).

[35] Obj. to Reply Evid. – ECF No. 14.

[36] Renewal Notice, Ex. 1 to Suppl. Henry Decl. – ECF No. 13-1 at 4 (p. 1).

[37] For this reason, the plaintiff's argument that Rule 12(d) requires the motion to be converted into one for summary judgment is off the mark. *In re Tesla, Inc. Sec. Litig.*, 477 F. Supp. 3d 903, 919 (N.D. Cal. 2020) (Rule 12(d) is "subject to two exceptions," judicial notice and the incorporation-by-reference doctrine).

ORDER – No. 23-cv-02464-LB            10

Trial, Ch. 12-C ¶ 12:107 (2023) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 894–95 (1990)).

That said, "the court has the discretion to consider new evidence presented on reply." *Hodges v. Hertz Corp.*, 351 F. Supp. 3d 1227, 1249 (N.D. Cal. 2018). Courts "generally exercise[] this discretion when the new evidence appears to be a reasonable response to the opposition or upon giving the non-movant the opportunity to respond." *Sweet v. Cardona*, No. C 19-03674 WHA, 2023 WL 2213610, at *10 (N.D. Cal. Feb. 24, 2023) (cleaned up) (collecting cases). For example, "[e]vidence submitted in direct response to evidence raised in the opposition . . . is not 'new'" in the first place. *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 559 n.87 (C.D. Cal. 2014). Relatedly, it may be appropriate to permit reply evidence where it "provides the full context to [the non-moving party]'s select[ive] recitation of the facts." *Terrell v. Contra Costa Cnty.*, 232 F. App'x 626, 629 n.2 (9th Cir. 2007). This is particularly true where "the new evidence . . . is consistent with the evidence and arguments presented in the original motion." *Edgen Murray Corp. v. Vortex Marine Constr., Inc.*, No. 18-CV-01444-EDL, 2018 WL 4203801, at *3 n.1 (N.D. Cal. June 27, 2018).

When allowing new reply evidence, the court should give the non-moving party an opportunity respond, unless "the evidence relates to an issue brought up in a party's opposition." *Lin v. Solta Med., Inc.*, No. 21-CV-05062-PJH, 2021 WL 5771140, at *8 (N.D. Cal. Dec. 6, 2021); *Lu v. Lezell*, 45 F. Supp. 3d 86, 91 (D.D.C. 2014) ("If the movant raises arguments for the first time in his reply to the non-movant's opposition, the [c]ourt may either ignore those arguments in resolving the motion or provide the non-movant an opportunity to respond to those arguments by granting leave to file a sur-reply.").

Here, it cannot be said that the reply evidence — a document that helps to show the defendant's compliance with § 663 — responds to evidence or an issue first raised in the opposition, because the opening motion argued and presented evidence on whether the defendant complied with § 663. Indeed, the reply evidence was "inadvertently omitted" from the opening

motion.[38] It is relevant, though, that the attorney who drafted the opening motion died several days before it was filed. The new attorney, who then only filed the opening motion, noticed the existence of the second August 25 document while reviewing the file to prepare the reply.[39] Also, the complaint acknowledges that the defendant "sent several documents to [the] plaintiff on August 25, 2020 . . . offering a renewal of the policy" (though the complaint specifically mentions only the Renewal Declarations Page, which was ambiguous about the payment due date).[40]

Moreover, the Renewal Notice attached to the reply forms part of the contract that is the crux of this case, the plaintiff's objection does not appear to dispute the authenticity of the Renewal Notice (though it takes issue with the defendant's evidence that the notice was delivered to the plaintiff as required by § 663), and the court's analysis of the complaint's viability would be incomplete without the full contract. *See Herb Reed Enters. v. Monroe Powell's Platters, LLC*, No. 2:11-CV-02010-PMP, 2014 WL 3894069, at *4 n.2 (D. Nev. Aug. 8, 2014) ("Defendants had an opportunity to respond to the new evidence at the motion hearing, at which Defendants . . . did not dispute the authenticity of the Personal Management Agreement Plaintiffs presented. The Court therefore will consider the Personal Management Agreement."). The court will thus consider the reply evidence and allow supplemental briefing.

The plaintiff may file an opposition to the reply brief within two weeks. The defendant may then file a reply brief of up to five pages one week later. The court will hold a further hearing on September 14, 2023, at 9:30 a.m.

---

[38] Suppl. Henry Decl. – ECF No. 13-1 at 2 (¶ 2).
[39] Goldberg Decl. – ECF No. 13-2 at 2 (¶¶ 2–8).
[40] Compl. – ECF No. 1-1 at 7–8 (¶¶ 9–12).

# CONCLUSION

The court is leaning towards granting the motion but allows supplemental briefing in light of the analysis described in this order.

**IT IS SO ORDERED.**

Dated: August 10, 2023

LAUREL BEELER
United States Magistrate Judge